```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X
                                          :   ECF CASE
JOHN SCHWIND,                             :
                                              03 Civ. 9904 (WCC)
              Plaintiff,                  :

       - against -                        :   OPINION
                                              AND ORDER
EW & ASSOCIATES, INC. and ELAINE WIRTH,   :

              Defendants.                 :
- - - - - - - - - - - - - - - - - - - - X
```

**A P P E A R A N C E S :**

                            LAW OFFICES OF DAN GETMAN
                            **Attorneys for Plaintiff**
                            9 Paradies Lane
                            New Paltz, NY 12561

DAN C. GETMAN, ESQ.

    Of Counsel

                            KAUFMAN, BORGEEST & RYAN, LLP
                            **Attorneys for Defendants**
                            200 Summit Lake Drive
                            Valhalla, NY 10595

JONATHAN B. BRUNO, ESQ.
VINCENT C. ANSALDI, ESQ.

    Of Counsel

**CONNER, Senior D.J.:**

Plaintiff John Schwind brings the instant action against defendants EW & Associates, Inc. ("EWA") and Elaine Wirth (collectively, the "defendants"), pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, New York State Labor Law, New York common law, the Employee Retirement Income Security Act ("ERISA") and the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"). Plaintiff alleges that during the course of his employment, as an independent contractor from April 1998 through January 1, 2001 and June 2002 through October 2002, and as an employee from January 1, 2001 through June 24, 2002, he was improperly denied overtime pay pursuant to 29 U.S.C. § 213 and New York State Labor Law Articles 6 and 19 and its implementing regulations 12 N.Y.C.R.R. §§ 142.2 *et seq*. Plaintiff also alleges a common law claim for breach of contract and an ERISA-COBRA claim for EWA's alleged failure to provide notice of plaintiff's right to receive a continuation of his employee health plan pursuant to 29 U.S.C. § 1166(a)(4). In an Opinion and Order dated February 18, 2005, we dismissed plaintiff's claim relating to alleged violations of the overtime provisions of the FLSA during the period of January 1, through June 24, 2002. However, we declined to consider whether the "retail or service establishment" exemption (also referred to as the "commissioned salesman exemption") under 29 U.S.C. § 207(i) was applicable to the period in which plaintiff was an independent contractor,[1] and instead gave the parties an opportunity to submit additional evidence accompanied by supplemental memoranda of law with respect to this issue.

---

[1] We note that although independent contractors are not protected under the provisions of the FLSA, in our February 18, 2005 Opinion and Order we concluded that, although plaintiff was labeled an independent contractor at certain times of his employment, he was in fact an employee within the meaning of the FLSA. *See Schwind v. EW & Assocs.*, 357 F. Supp. 2d 691, 701-02 (S.D.N.Y. 2005) (Conner, J.).

In the present motion, defendants move for summary judgment pursuant to FED. R. CIV. P. 56 on the basis that plaintiff's overtime is exempt during the period in which he was an independent contractor pursuant to the commissioned salesman exemption. For the reasons stated hereinafter, defendants' motion is granted.

**BACKGROUND**

The facts of this case are set forth extensively in our previous opinion, familiarity with which is presumed. *See Schwind*, 357 F. Supp. 2d at 693-96. Accordingly, we set forth below only the facts necessary for decision on the present motion.

**DISCUSSION**

**I.      Summary Judgment Standard**

Under FED. R. CIV. P. 56, summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986). A fact is material only if, based on that fact, a reasonable jury could find in favor of the non-moving party. *See Anderson*, 477 U.S. at 248. The burden rests on the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See Anderson,* 477 U.S. at 255. However, to defeat summary judgment, the nonmovant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 586 (1986). The court's role at this stage of the litigation is not to decide issues of material fact, but to discern whether any exist. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

**II.     FLSA Overtime Claim**

   **A.     General FLSA Standards**

The FLSA was enacted to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers" and to ensure that employees are fairly compensated. 29 U.S.C. § 202(a); s*ee also Reich v. New York City Transit Auth.*, 45 F.3d 646 (2d Cir. 1995). The statute requires that employers pay overtime at a rate of not less than one and one-half times the employee's regular rate for hours worked in excess of forty per week. *See* 29 U.S.C. § 207(a).

The FLSA, however, specifically provides for exemptions that exclude certain employees from the FLSA's overtime provisions. These exemptions are defined by the Department of Labor ("DOL") regulations and "[e]mployees whose jobs fall within one of the enumerated categories are not entitled to certain protections of the Act [FLSA]. . . . Employers need not pay exempt employees overtime no matter how many hours they work each week." *Wright v. AARGO Sec. Servs., Inc.*, No. 99 Civ. 9115, 2001 WL 91705, at *2 (S.D.N.Y. Feb. 2, 2001).

The employer has the burden of proof to establish that the subject employee falls under any of the enumerated exemptions. *See Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960); *Wright*, 2001 WL 91705, at *2. Because the FLSA is a remedial statute, "its exemptions are construed narrowly against the employer." *Wright*, 2001 WL 91705, at *2 (citing *Martin v. Malcolm*

*Pirnie, Inc.*, 949 F.2d 611, 614 (2d Cir. 1991); *Dambreville v. City of Boston*, 945 F. Supp. 384, 391 (D. Mass. 1996)).

### B. Commissioned Salesman Exemption[2]

Defendant contends that although this Court concluded that during the period plaintiff was an independent contractor, April 1998 through January 1, 2001 and June 2002 through October 2002, he was an employee within the meaning of the FLSA, plaintiff is still exempt from the overtime provisions because he falls under the commissioned salesman exemption. 29 U.S.C. § 207(i) provides that in the case of "employment by retail or service establishment:"

> No employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

Thus, to be entitled to the commissioned salesman exemption, an employer must demonstrate that:

---

[2] Although plaintiff maintains that defendants waived the right to assert the commissioned salesman exemption, we disagree for the reasons set forth in our prior opinion. *See Schwind*, 357 F. Supp. 2d at 697-700. The Federal Rules permit parties to amend their pleadings, and the Supreme Court has held that leave to amend should be "freely given." *See Foman v. Davis*, 371 U.S. 178, 182 (1962). In addition, the Second Circuit has held that "a district court may consider the merits of an affirmative defense - even one explicitly listed as such in Fed. R. Civ. P. 8(c) - raised for the first time at the summary judgment stage, so long as the plaintiff has had an opportunity to respond." *Astor Holdings, Inc. v. Roski, III*, 325 F. Supp. 2d 251, 260-61 (S.D.N.Y. 2003) (citing *Curry v. City of Syracuse*, 316 F.3d 324, 330-31 (2d Cir. 2003)). In the case at bar, plaintiff has been given an adequate opportunity to respond and submit additional evidence and in fact has done so. Accordingly, we will consider whether the commissioned salesman exemption is applicable to the present case.

(1) the employee was employed by a retail or service establishment; (2) the employee's regular rate of pay exceeded one and one-half times the minimum hourly rate; and (3) more than half of the employee's compensation for a representative period (not less than one month) represented commissions on goods or services. 29 U.S.C. § 207(i); 29 C.F.R. § 779.412. Consequently, defendants contend that plaintiff is not entitled to overtime during the period he was an independent contractor because he was paid on a commission basis and earned in excess of one and one-half times the minimum hourly rate. (Defs. Reply Mem. Supp. Summ. J. at 6.) Plaintiff, however, maintains that the commissioned salesman exemption is inapplicable because EWA is not a retail or service establishment within the meaning of the FLSA and defendants are unable to demonstrate that plaintiff's regular rate of pay was more than one and one-half times the applicable minimum wage. (Pl. Suppl. Mem. Opp. Summ. J. at 2-3, 5.) We will consider each element of the commissioned salesman exemption in turn.

### 1. More Than Half of Compensation For a Representative Period Represents Commissions on Goods or Services

Neither party appears to contest that this prong has been met. In fact, plaintiff admits that he was paid solely on a commission basis from 1998 through 2000 and from June 2002 through October 2002. (Schwind Aff. ¶ 7.) Accordingly, we find that there is no material issue of fact as to whether more than half of plaintiff's compensation for a representative period represents commission on goods or services and conclude that it does.

### 2. Retail or Service Establishment

Plaintiff contends that EWA is not a "retail or service establishment" within the meaning of the FLSA, and therefore the commissioned salesman exemption is inapplicable. A retail or service establishment means "an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale[3] and is recognized as retail sales or services in the particular industry."[4] 29 C.F.R. § 779.332. The regulations further define a retail or service establishment as:

> one which sells goods or services to the general public. It serves the everyday needs of the community in which it is located. The retail or service establishment performs a function in the business organization of the Nation which is at the very end of the stream of distribution, disposing in small quantities of the products and skills of such organization and does not take part in the manufacturing process.

29 C.F.R. § 779.318(a). However, 29 C.F.R. § 779.318(b) further explains that "[t]he legislative history of the section 13(a)(2) exemption for certain retail or service establishments shows that Congress also intended that the retail exemption extend in some measure beyond consumer goods and services to embrace certain products almost never purchased for family or noncommercial use." The products that would fall under this category include those that have widespread use similar to consumer goods, are often distributed in showrooms similar to those used for consumer goods, and are frequently used in commercial activities of limited scope. 29 C.F.R. § 779.318(b). Nonetheless,

---

[3] The regulations define resale as "selling again" and note that "[a] sale is made for resale where the seller knows or has reasonable cause to believe that the goods or services will be resold, whether in their original form, or in an altered form, or as a part, component or ingredient of another article." 29 C.F.R. § 779.331.

[4] Although this definition of "retail or service establishment" is found in 29 U.S.C. § 213(a)(2), which has been repealed, this definition still remains in effect for purposes of § 207(i). *See* 29 C.F.R. § 779.411; *see also Reich v. Delcorp, Inc.*, 3 F.3d 1181, 1183 (8th Cir. 1993) ("[A]ny construction of the term as defined in § 213(a)(2) became a part of the definition of the term as found in § 207(i). Nothing in the 1990 amendment changed § 207(i).").

the regulations caution that "[t]he list of strictly commercial items whose sale can be deemed retail is very small and a determination as to the application of the retail exemption in specific cases would depend upon the consideration of all the circumstances relevant to the situation." *Id*. However, we note that there is no bright line rule for determining whether an establishment is a "retail or service establishment" and a case-by-case approach is necessary in making this determination. *See Collins v. Horizon Training Centers, L.P.*, No. 02 Civ. 1310, 2003 WL 22388448, at *5 (N.D. Tex. Sept. 30, 2003) (citing *Shultz v. Crotty Bros. Texas, Inc.*, 310 F. Supp. 761, 767 (E.D. Tex. 1970)).

In the case at bar, defendants operate a training and consulting firm which provides computer training for software programs and systems to commercial businesses. (Defs. Suppl. Mem. Supp. Summ. J. at 3-4.) Defendants contend that EWA meets the characteristics of a "retail or service establishment" because "EWA's sales of computer consulting and training services meet the everyday needs of the community, stand at the end of a system of distribution, and provide services for the comfort and convenience of the general public's daily routine." (*Id*. at 3, 5.) Defendants rely on *Viciedo v. New Horizons Computer Learning Ctr.*, 246 F. Supp. 2d 886 (S.D. Ohio 2003) and *Collins* in support of this assertion.

In *Viciedo* and *Collins*, the courts concluded that "computer training is fundamental to function in today's society: '[R]egardless of the level of complexity of the training, in today's world, any type of computer training serves the everyday needs of the community,'" and held that the computer training schools involved in those actions were "retail or service establishments" within the meaning of section 207(i). *Collins*, 2003 WL 22388448, at *6 (quoting *Viciedo*, 246 F. Supp. 2d at 894). In *Collins*, the defendant provided computer and software training to the general public and its customer base included individuals and businesses, although most of its consumers were

7

businesses. 2003 WL 22388448, at *6-7. However, the court in *Collins* held that "even if most of its consumers are businesses," the defendant can still qualify as a "retail or service establishment" so long as the "sales are not for resale and are recognized in the industry as retail." *Id*. at *7 (citing *Mitchell v. Kentucky Fin. Co.*, 359 U.S. 290, 294 (1959)).

Plaintiff, however, maintains that the training offered by defendants, covering ACT! Software and Microsoft office products, was provided exclusively to businesses and explains that "ACT! is a business software designed by salespeople for professional salespeople and small businesses to keep track of accounts and contacts. ACT! would not be appropriate for household consumers. It was designed to handle corporate databases of contacts for sales and other purposes." (Pl. Suppl. Mem. Opp. Summ. J. at 4 n.5.) In addition, plaintiff points out that in *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190 (1966), the Supreme Court held that the meaning of "retail" is to be determined by the courts, not by the defendant or the defendant's industry. (Pl. Suppl. Reply Mem. Opp. Summ. J. at 2.); *see also Idaho Sheet Metal*, 383 U.S. at 204-05.

Furthermore, plaintiff contends that defendants' services were sales for resale, which negates the "retail" concept. (Pl. Suppl. Reply Mem. Opp. Summ. J. at 3.) Although defendants assert that the services provided by EWA were not for resale, plaintiff alleges that "EWA sold most of its services during the relevant period to large computer companies such as IBM that resold the trainings to their customers." (*Id.* (citing Schwind Suppl. Decl. ¶ 5).) The only evidence provided by the parties to support their opposing contentions, is their own self-serving affidavits which are in direct contradiction on this issue. Defendants offer an affidavit of Elaine Wirth which states that over seventy-five percent of EWA's dollar volume of sales were not for resale. (Wirth Aff. ¶ 8.) Wirth explains: "We never intended, nor do we have any indication that EWA's customers would resell

the services provided to them by EWA [or] . . . would pass along the costs of our services to their customers, or resell our services to their own employees." (Wirth Aff. ¶ 8.) Schwind, however, offers his own declaration wherein he contends that the services provided by EWA were not considered retail by the parties involved in this case, or anybody in the industry, and to the best of his knowledge, during the relevant periods, seventy-five percent or more of the sales revenue generated by EWA was "through subcontracting with large corporations . . . to deliver training services to <u>their customers</u>." (Schwind Second Suppl. Decl. ¶¶ 3, 4 (emphasis in original).) According to plaintiff,

> EWA contracted with independent contractor trainers, who we supplied to these large corporate clients . . . to act as trainers who would then train the clients's business customers. We would then bill our client for the services ultimately performed by our subcontractors. These large corporations, would use our training services and sell them to their business customers. We knew exactly who the end customer was and we knew that our clients would pass along the cost of our services (after a healthy markup) to their customers. As a matter of fact, we signed non-compete agreements with these companies which prohibited us from dealing directly with the end customer.

(*Id*. ¶ 5.) By plaintiff's own admission, although he may not have realized it, it is clear that the services provided by EWA were not intended for resale. Defendants supplied trainers to clients who would train the client's employees or the client's business customers, whichever was required by the client. This places defendants' services at the end of the stream of distribution, demonstrating that the services were not intended for resale. The regulations define resale as "selling again." 29 C.F.R. § 779.331. EWA did not sell a service that was then resold; rather, defendants provided a service to the end customer, even if it was their client's customer. Consequently, we conclude that EWA did not provide services that were intended for resale.

Furthermore, with respect to plaintiff's argument that the services provided by EWA were

9

sold to business customers and not to households, therefore placing EWA outside the scope of the "retail or service establishment" exemption, we disagree. Although EWA provided training on proprietary systems and high end software exclusively tailored for the business being trained, they still served the everyday needs of the community. *See, e.g., Viciedo*, 246 F. Supp. 2d at 893-94 (holding that "regardless of the level of complexity of the training, in today's world, any type of computer training serves the everyday needs of the community") (citing *Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 801 (9th Cir. 2001) (Berzon, J., concurring in part and dissenting in part) (recognizing that "[n]o one can realistically expect to be successful in our world of mega-information without being able to use a computer") (quoting Carl W. Battle, *Smart Maneuvers: Taking Control of Your Career and Personal Success in the Information Age*, at 106 (1994)); *Bryant v. Muth*, 994 F.2d 1082, 1088 (4th Cir. 1993) ("Society is becoming increasingly dependent upon computers in virtually every aspect of daily life."); *Yeager v. Drug Enforcement Admin.*, 678 F.2d 315, 320 (D.C. Cir. 1982) ("It cannot be gainsaid that computers have become an integral part of the functioning of our society.")). In addition, we note that although most of EWA's clients were businesses, the Supreme Court recognized that "Congress also intended that the retail exemption extend in some measure beyond consumer goods and services to embrace certain products almost never purchased for family or noncommercial use." *Idaho Sheet Metal*, 383 U.S. at 203. Thus, because EWA provides services that meet the everyday needs of the community, stand at the end of a system of distribution, and serve the community at large, we conclude that EWA is a "retail or service" establishment within the meaning of the exemption. Next we must consider whether plaintiff's regular rate of pay exceeded one and one-half times the minimum hourly rate.

### 3. Regular Rate of Pay in Excess of One and One-Half Times the Minimum Hourly Rate

Plaintiff maintains that he was never paid one and one-half times the minimum wage for each workweek, and therefore the "retail or service establishment" exemption is inapplicable. Section 207(i) requires that an employee's regular rate of pay be in excess of one and one-half times the minimum hourly rate[5] applicable to him under 29 U.S.C. § 206 in order for the exemption to apply. 29 U.S.C. § 207(i). The regular rate of pay, as explained by the Supreme Court is "'the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed' and 'by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments.'" 29 C.F.R. § 779.419 (quoting *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945)). The regular rate of pay "is a rate per hour, computed for the particular workweek by a mathematical computation in which hours worked are divided into straight-time earnings for such hours to obtain the statutory regular rate." *Id.* The regulations further provide that "a single workweek" is the standard and averaging of hours over two or more weeks is not permitted. *See* 29 C.F.R. § 778.104.

> [I]f an employee works 30 hours one week and 50 hours the next, he must receive overtime compensation for the overtime hours worked beyond the applicable maximum in the second week, even though the average number of hours worked in the 2 weeks is 40. This is true . . . regardless of whether he is paid on a daily, weekly, biweekly, monthly or other basis. The rule is also applicable to . . . employees paid on a commission basis. It is therefore necessary to determine the hours worked and the compensation earned by . . . commission employees on a

---

[5] Plaintiff was employed by defendants from 1998 through 2002, and the applicable minimum wage during that time period was $5.15 per hour, which has been the minimum wage since September 1, 1997. One and one-half times $5.15 equals $7.73. Therefore, to qualify for the exemption, plaintiff's regular rate of pay must have exceeded $7.73 per hour for each workweek in which he asserts that he was entitled to overtime wages. *See Viciedo*, 246 F. Supp. 2d at 895.

weekly basis.

29 C.F.R. § 778.104. However, the regulations also provide that "[i]f it is not possible or practicable to allocate the commission among the workweeks of the period in proportion to the amount of commission actually earned or reasonably presumed to be earned each week, some other reasonable and equitable method must be adopted." 29 C.F.R. § 778.120. Section 778.120 further provides examples of what the Department of Labor deems reasonable and equitable and states that "[t]he following methods <u>may be used</u>." *Id*. (emphasis added). We note, however, that in using the word "may" the regulations permit a court to adopt any method so long as it is "reasonable and equitable." Accordingly, we deem it necessary to adopt a "reasonable and equitable" method other than those provided in the regulation, given the unique circumstances involved in this case, namely the fact that plaintiff was not paid on a set schedule because he worked solely on commission and was paid only after defendants were paid by their customers.[6] In addition, we note that neither plaintiff nor defendants have provided the Court with the number of hours worked by plaintiff or the amount of hours plaintiff worked over the forty-hour benchmark which would entitle him to overtime.[7]

Consequently, in light of the goals of the FLSA, we believe the most reasonable and equitable method in determining plaintiff's regular rate of pay based on the deferred commission payments he received from defendants is to average the commissions received by plaintiff in a given year and

---

[6] The agreement worked out by the parties regarding plaintiff's pay during the relevant time period required defendants to pay plaintiff fifty percent of the net profits which was defined as "profits less direct cost of trainers, project expenses and other operating expenses which are yet to be defined." (Pl. Mem. Opp. Summ. J., Ex. E.) In addition, the parties agreed that plaintiff would be paid only after defendants were paid by the client for a particular project. (*Id.*)

[7] Plaintiff has only provided a conclusory statement that he "regularly worked more than 40 hours per week for defendants." (Complt. ¶ 19.)

allocate the average to each week. This is necessary because of the fluctuating and irregular schedule in which plaintiff was paid. "Commission salesman [sic] have fluctuating hours and income, and it is unlikely that Congress meant to require employers to pay overtime in the lean weeks when the fat weeks more than make up. Other cases have used periods as long as a year to establish average wages." *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 307 (7th Cir. 1986) (citing *Triple "AAA" Co. v. Wirtz*, 378 F.2d 884, 887 (10th Cir. 1967)). Consequently, when plaintiff's average wages are calculated on a yearly basis it is clear that his regular rate of pay was in excess of one and one-half times the minimal hourly rate applicable to him, regardless of how many hours of overtime he alleges to have worked.[8] Accordingly, plaintiff is exempt from the overtime provisions of the FLSA under the "retail or service establishment" exemption.

## CONCLUSION

For all of the foregoing reasons, the motion of defendants EW & Associates, Inc. and Elaine Wirth for summary judgment is granted. Plaintiff's claims relating to the failure to provide overtime

---

[8] Plaintiff earned $123,864.84 in 1998 when he worked forty weeks, for an average weekly salary of $3,096.62; $92,895.26 in 1999 when he worked fifty-two weeks, for an average weekly salary of $1,786.44; and, $120,666.73 in 2000 when he worked fifty-two weeks, for an average weekly salary of $2,320.51. (Defs. Suppl. Mem. Supp. Summ. J. at 6-7.) Even if plaintiff worked every hour of every week at the rate of one and one-half overtime in 1998, 1999 and 2000, his weekly salary would still be less than his average weekly salary during those years. (*Id.*)

pursuant to the Fair Labor Standards Act during all periods of employment are hereby dismissed with prejudice but without costs.

SO ORDERED.

Dated: White Plains, New York
       May 25, 2005

                                                    William C. Conner
                                                    Sr. United States District Judge